TOMES *et al.* *v.* BARNEY.

*(Circuit Court, S. D. New York.* April 9, 1888.)

1. LIMITATION OF ACTIONS—DISABILITIES AND EXCEPTIONS—ABSENCE FROM STATE.

Under section 100 of the New York Code of Procedure, as amended July 10, 1851, which provides for an extension of the time limited to six years by section 91 of that Code for the commencement of actions therein specified, by the departure from and residence out of the state of a person after a cause of action has accrued against him, mere absences of such person from the state for business or pleasure, without any intention of remaining away, and respectively followed by a return thereto as his place of residence, though aggregating twelve months in seven successive years, do not constitute departure from and residence out of the state within the meaning of section 100, and such period of twelve months is not to be added to the six-years limitations prescribed by section 91.

2. COURTS—FEDERAL—FOLLOWING STATE DECISIONS.

Where a question arising under a statute of a state has been passed upon by a federal court in that state in the light of apparently conflicting opinions of the state courts, the federal court will, in a subsequent case involving the same question, where its attention is called for the first time to a decision of the state court of last resort definitely interpreting that statute, reverse its former decision, and follow the ruling of such state court notwithstanding the fact that that ruling was made prior to the earlier decision of the federal court.

At Law.

This action was commenced February 3, 1868, by the service upon the defendant, Hiram Barney, of a summons issued out of the superior court of the city of New York, in the state of New York, to recover, besides other things, "fees" illegally exacted from the plaintiffs' firm by the defendant as collector of customs at the port of New York in said state, for oaths to entries, stamps on invoices, and delivery orders in case of various importations made between April 8, 1861, and June 30, 1864, from a foreign country or countries to the United States at said port. Certain of these "fees" were exacted more than six years prior to the commencement of this action, viz., February 3, 1868. February 17, 1868, this action was duly removed by writ of *certiorari* from said superior court into this court. March 11, 1868, the plaintiffs filed and served a common-law declaration in *assumpsit*, which alleged indebtedness as existing January 2, 1868, and was for money had and received. Subsequently the following pleadings were filed and served: *First.* Defendant's plea of the general issue, and that the supposed causes of action in said declaration mentioned did not any of them accrue to the plaintiffs at any time within six years next before the commencement of this suit. *Second.* Plaintiffs' replication that, after the causes of action had accrued, defendant departed from and resided out of this state for several successive periods, amounting in the aggregate to twelve months, and this suit was brought within six years and twelve months after the said several causes of action and each and every thereof accrued. *Third.* Defendant's rejoinder that defendant did not depart from and reside out of this state for several successive periods, amount-

ing in the aggregate to 12 months, in manner, form, etc.; concluding to the country. Upon the trial the defendant, Barney, testified as follows: That he was collector of customs at the port of New York, from April 8, 1861, to September 8, 1864. That for the past 50 years he had always had an office in the city of New York, and had always resided in the state of New York, at Kingsbridge, in the county of Westchester, (now part of New York city,) with the exception of from 1842 to 1852, when he resided in Brooklyn, in that state. During this whole time he never resided or voted elsewhere. That at each election from 1861 to 1870, (*i. e.*, from before the accruing until after the commencement of this action,) he voted at Kingsbridge, with the exception of the November election in 1868, (*i. e.*, after the commencement of this action,) when he was in Iowa on a matter of business, probably two or three weeks; though if there was any other election in 1868 than the November election he voted at Kingsbridge. That at different times from April 10, 1861, to April 10, 1868, (the seven years prior to the commencement of this action,) he was temporarily absent from the state of New York (but in the United States) on private business or for pleasure; never for any other purpose, and never with the intention of remaining away. That these absences consisted mainly of brief visits to Washington, D. C., during the first four years, (*i. e.*, during his term of office as said collector,) and of visits to the states of Iowa and Wisconsin, and to the south, during the following years. Though frequent, they were for short periods, varying from one day to perhaps forty or more days; probably not more than two or three as long as forty days; not more than one over fifty days, and this, the defendant thought, was less than ninety days. These absences, he estimated, averaged two months a year from April 10, 1861, to April 10, 1868. It did not appear that at any time any attempt was made to commence this action by placing the summons therein in the hands of the sheriff or other officer, as provided by section 99 of the New York Code, as amended by section 5 of the act of April 25, 1867, (2 Laws N. Y. 1867, p. 1921.) It did, however, appear from the evidence of the plaintiffs' witnesses that a summons was made out in 1866 for the purpose of commencing this action, and placed for service in the hands of one of the plaintiffs' attorney's clerks, neither of whom was ever a sheriff or other officer of the county of New York or of Westchester; that it was subsequently torn up without being served; and that a new summons was made out, dated January 2, 1868, which was served as aforesaid upon the defendant on February 3, 1868. At the close of the trial, the defendant moved the court to direct the jury to find in his favor as to the items of fees exacted prior to February 3, 1862, on the grounds that, under the pleadings and proof in the case, the same were barred by the New York statute of limitations.

*Stephen A. Walker*, U. S. Atty., and *Thomas Greenwood*, Asst. U. S. Atty., for the motion.

The following laws should be considered in determining the question involved in this motion: Section 34, Act Sept. 24, 1789; 1 U. S. St. at Large, 92; (Section 721, Rev. St.,) which provides that "the laws of the several states,

except where the constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decisions in trials at common law, in the courts of the United States, in cases where they apply;" Section 91, Code Proc. N. Y., adopted April 12, 1848, as amended April 11, 1849, (Chapter 438, Laws N. Y. 1849, p. 635,) and in force until 1877, which provided, as a statute of limitations, that "an action upon a contract, obligation, or liability, express or implied," (except a judgment or decree of a court, and a sealed instrument,) should be commenced within six years after the same had accrued; the laws of New York, from 1801 to the present time, which have been enacted to suspend the running of the statute of limitations: the act of April 8, 1801, § 5, (1 Vanness & W. N. Y. Laws, Rev. 1813, p. 186;) R. S., N. Y. 1828, § 27, art. 2, c. 4, pt. 3, (see volume 2, p. 297, 1st Ed. 1829;) Code Proc. N. Y. adopted April 12, 1848, (see Laws N. Y. 1848, p. 514, § 80;) the act of April 11, 1849, amending Code Proc. N. Y., adopted April 12, 1848, (see Laws N. Y. 1849, p. 637, § 100;) and Code Proc. N. Y., as amended July 10, 1851, § 100, (see Laws N. Y. 1851, p. 882,) covering the action at bar, which provided that "if, when the cause of action shall accrue against any person, he shall be out of the state, such action may be commenced within the terms herein respectively limited after the return of such person into this state; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action;" Code Proc. N. Y., as amended April 25, 1867, § 100, (see 2 Laws N. Y. 1867, p. 1921,) which provided: "If, when the cause of action shall accrue against any person, he shall be out of the state, such action may be commenced within the terms herein respectively limited, after the return of such person into this state, and if, after such cause of action shall have accrued, such person shall depart from and reside out of this state, or remain continuously absent therefrom, for the space of one year or more, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action;" (and such is the law to-day, unless designation is made by a resident of a person upon whom a summons may be served during his absence. See Code Civil Proc. N. Y. §§ 401, 430, 432;) Section 99, Code Proc. N. Y., adopted April 12, 1848, and as amended July 10, 1851, (Laws N. Y. 1851, p. 881;) and section 5 of the act of April 25, 1867, (2 Laws N. Y. 1867, p. 1921,) which provided that an action may be deemed to be commenced so as to save the running of the statute of limitations, provided the summons be delivered to the sheriff with the intent that it should be actually served.

Under section 5 of the act of April 8, 1801, it has been repeatedly settled that if the debtor is in this state at the time the action accrues against him, or comes here subsequently, so that the statute of limitations once begins to run against the demand, it continues to run notwithstanding he departs from the state within six years; and that no subsequent disability stops it. *Didier* v. *Davison,* 2 Barb. Ch. 486. Under the act of April 11, 1849, in case a cause of action accrued against a person while in this state, a simple departure was sufficient to suspend the running of the statute of limitations. 1 Whitt. Pr. (Ed. 1865,) 239. Mere absences of such person from the state for business or pleasure, without the intention of remaining away, and respectively followed by a return to the state as his residence, though aggregating twelve months during seven successive years, never in the state of New York constituted the departure from and residence out of the state required by any of these acts. *Ford* v. *Babcock,* 2 Sandf. 518; *Wheeler* v. *Webster,* 1 E. D. Smith, 1; *Hickok* v. *Bliss,* 34 Barb. 321; *Stone* v. *Flower,* 47 N. Y. 566, 569; *Belknap* v. *Sickles,* 7 Daly, 249, 252. Under the act of 1867, as well as under the present act, (section 401, Code Civil Proc.,) mere absence of such per-

son from the state, to suspend the running of the statute, must be continuous absence therefrom for the space of one year or more. *Belknap* v. *Sickles, supra; Ullner* v. *Butterfield,* 49 N. Y. Super. Ct. 515. Further, the New York legislature has, in effect, declared that mere absence from the state did not constitute such departure and residence under the act of 1851, which applies to this action, by the passage, while that act was in force, and on May 4, 1864, of an act concerning persons in the military and naval service of the United States, (chapter 578, Laws N. Y. 1864, p. 1332.) In a case involving the construction of a state statute, federal courts are bound to follow the judgment of the highest judicial authority of the state, unless the same conflict with the constitution of the United States, etc. *McCluny* v. *Silliman,* 3 Pet. 270; *Sumner* v. *Hicks,* 2 Black, 532; *Leffingwell* v. *Warren,* Id. 599; *Davie* v. *Briggs,* 97 U. S. 628; *Andreae* v. *Redfield,* 98 U. S. 225. No such conflict exists in the decision of the New York court of appeals in *Stone* v. *Flower, supra.*

*A. W. Griswold* and *A. W. Griswold, Jr.,* in opposition, cited:

*Cole* v. *Jessup,* 10 N. Y. 96; *Berrien* v. *Wright,* 26 Barb. 208; *In re Thompson,* 1 Wend. 43; *Harnden* v. *Palmer,* 2 E. D. Smith, 172;' *Gans* v. *Frank,* 36 Barb. 320; *Cutler* v. *Wright,* 22 N. Y. 477; *Bennett* v. *Cook,* 43 N. Y. 537; the decision of Referee PIERREPONT in the unreported case of *Dale* v. *Barney,* which was affirmed by Judge BLATCHFORD and followed by Judge WALLACE in *Hennequin* v. *Barney,* 24 Fed. Rep. 580, and by Judge WHEELER in the unreported case of *Oelrichs* v. *Barney,* and by Judge SHIPMAN in the unreported case of *Cateaux* v. *Barney.*

LACOMBE, J., (*orally.*) It seems to me that the principles of law governing decisions in federal courts in the construction of the statutes of a state render the determination of this case easy. It is well settled that these courts, in construing the statute law of the several states, will follow the latest decision of the court of last resort in the particular state whose statute is before the court for construction. That doctrine was settled early in the history of the supreme court, and seems to control this case here. Judge SHIPMAN, Judge WHEELER, and Judge WALLACE, whose decisions are referred to by plaintiffs, have apparently all declined to examine the question anew, but have based their decision upon the decision of Judge BLATCHFORD. The decision of Judge BLATCHFORD is based upon the report of a referee. Judge BLATCHFORD has written nothing; but the report of the referee contains an elaborate discussion of decisions, perhaps conflicting, of the lower courts of the state. When the case was before Judge BLATCHFORD, if his attention were simply called to the fact, as was the referee's, that there was a dispute between the different courts in the state upon this question, (and we must assume that it was so called,) he of course was entitled to examine such question as a new one, and to decide it accordingly. But if, subsequent to the enunciation of that decision, the court of last resort in the state had construed the statute the other way, I have not the slightest doubt that, upon that fact being brought to Judge BLATCHFORD's attention in a subsequent case, he would at once have reversed his former ruling. The situation is precisely the same whether the decision of the state court of last resort is made at a later period, or whether, at a later period, it is for the first time called to the attention of the federal court. Sitting on the trial of

this case precisely as Judge BLATCHFORD would sit if he were again disposing of the question which he disposed of in *Dale* v. *Barney*, I feel sure that, under the well-settled rules of construction established by the supreme court, I only decide as Judge BLATCHFORD would decide, in holding that in view of the case of *Stone* v. *Flower*, 47 N. Y. 566, a case not before the referee, and presumably not before Judge BLATCHFORD, and which is later than the state decisions before cited, this statute is to be construed, in the federal courts as in the state courts, as not covering absences which are not accompanied by residence abroad. I will therefore grant the defendant's motion as to the items exacted prior to February 3, 1862.